**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                     Case No. 09-20576

DAVVIN MOSELY,

    Defendant.
                                                /

**ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS"**

Before the court is Defendant Davvin Mosley's "Motion to Suppress," filed on January 8, 2010. On January 22, 2010, the Government filed a response. The court held a hearing on the motion on March 3, 2010. For the reasons stated below and on the record, the court will deny Defendant's Motion.

The court fully set out the pertinent facts during the hearing. The facts recited by the court at the conclusion of the hearing are adopted herein even if not restated, and are supplemented in part.

Defendant argues that he was seized when the officers parked their squad car behind the parked automobile he was about to enter and turned on their interior emergency lights. He argues that this "seizure" was not supported by a reasonable articulable suspicion. The court holds that Defendant was not seized when the officers turned on their lights, and, even if he was seized, the officers had a reasonable basis to so do. The encounter between the officers and Defendant was fundamentally a consensual one rather than a non-consensual *Terry*-type stop; Defendant was not actually seized until the officer handcuffed him after Defendant voluntarily alighted the car and the officer confirmed that the object in Defendant's right shoe was, in fact, a firearm as the officer had suspected when viewing it from outside the car.

Under the Fourth Amendment, there are three types of permissible encounters between the police and citizens: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or Terry stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause.'" *United States v. Jones*, 562 F.3d 768, 773 (6th Cir. 2009). The Sixth Circuit has explained that a "consensual encounter can ripen into a seizure if in light of all of the circumstances, . . . a reasonable person [would] have believed that he or she was not free to walk away." *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009). In determining whether a reasonable person would have believed that he or she was free to leave, the court therefore considers the totality of the circumstances. The thrust of Defendant's argument was that he was seized when the officers pulled behind the parked car he was entering and turned on the police car's interior emergency lights. In *See*, the Sixth Circuit held that a *Terry* stop occurred when an officer partially blocked the defendant's car by pulling in front of it with a marked police car. *Id.* at 313. In *United States v. Carr*, No. 08-5700, 2009 WL 4795861 (6th Cir. Dec. 14, 2009), a divided panel remanded the issue of whether a *Terry* stop had occurred when an officer stopped his car in front of defendant's car without "prevent[ing] the defendant from driving away," and activated the police car's emergency lights. *Id.* at *3. Accordingly, *Carr* implies that activating emergency lights does not automatically transform a consensual encounter into a *Terry* stop. There are, however, some factors present here that could support a holding that Defendant was seized: there were two officers, rather than just one, they were uniformed and armed, and the activation of the lights could be interpreted by a reasonable person as a police order to stay put. Nevertheless, other factors weigh in favor of finding no seizure. Most importantly, the officers did not block either the car—the driver could have simply driven off— or the path Defendant may

2

have continued to walk had he not approached the passenger side of the car and proceeded to enter it. The police car was unmarked, unlike the marked police car in *See*. And although it is not clear from the record whether the officers switched their emergency lights on and off (as was held to be important in *Carr*), even if the lights were on during the entire encounter, a reasonable person could interpret them as simply a means for the police to identify themselves. Further, the car that Defendant was in had not begun pulling away; in fact, Defendant had not shut the car door when the officer reached that vicinity. Because the car was not on and was stationary, the flashing lights necessarily could not have communicated the well understood "pull over" command that they signal to a moving car. In this case, the officers merely stopped their patrol car behind a car parked at the side of an urban thoroughfare, switched on their emergency lights, and exited to ask consensual questions. Activating the flashing lights served merely to identify the vehicle as an official one, and did not constitute a command. Accordingly, Defendant was not seized until he was handcuffed after voluntarily exiting the car—but at that point the officer had gathered probable cause to arrest because, upon a brief and unobtrusive check of Defendant's shoe, the object he had earlier observed while looking into the car was confirmed as the gun he suspected it might be.

Even if the court were to assume that Defendant was seized when the officers pulled behind his car and activated the emergency lights, the officers had a reasonable articulable suspicion to justify the seizure.

> [A]n officer may conduct a brief investigatory stop of a person without a warrant if the officer has reasonable articulable suspicion that criminal activity is afoot. Whether a temporary investigative detention is justified by such reasonable suspicion requires consideration of the totality of the circumstances. The officer must have a particularized and objective basis for suspecting wrongdoing, but the likelihood of criminal activity need not rise to the level of probable cause.

*Jones*, 562 F.3d at 773. The officers were patrolling the area because it was known for criminal activity including car-jackings, especially near the time that local bars were

3

preparing to close—and that was the time that the incident took place. Two bars in the immediate area were known to be the scene of frequent criminal activity. The officers were flagged down by a group of women, one of whom called out, nearly "screaming" according to the officer's recollection, "Officers, officers! Those guys [including Defendant] are sexually harassing us." Upon the woman calling out to the officers, Defendant and his companion appeared to spot the police car and immediately retreat at a fast pace away from the area of the complaining women, across the four-lane roadway, and toward the parked car.

Defendant argues that the common usage of the phrase "sexual harassment" includes conduct that is not necessarily criminal, and that is certainly true. However, it also can include conduct that is criminal, e.g., unconsented physical groping and attempted sexual assualt. The officer's testimony revealed that the officers did not know immediately what the woman was trying to communicate, but it is obvious that the officers perceived the situation as a citizen's alarm.

The court does not place great emphasis on the high-crime-area factor in its analysis, although it does weigh in the balance. The court finds that the facts were sufficient to provide the officers with a reasonable articulable suspicion that criminal activity may be afoot. Assuming, then, that a *Terry* stop occurred, it would have been a lawful one.

For the reasons stated on the record and above, IT IS ORDERED that Defendant's "Motion to Suppress Evidence" [Dkt. # 12] is DENIED.

                                        s/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated: March 12, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 12, 2010, by electronic and/or ordinary mail.

                                                            s/Lisa G. Wagner
                                                            Case Manager and Deputy Clerk
                                                            (313) 234-5522